Good afternoon, your honors, and thank you for your support. My name is Anne Wilkes, and along with Gerald R. Harper, we represent the appellants, Dr. Brian Haygood and Haygood Begue, here at LLC in this case. To outline our argument, I will first address the jurisdictional issues raised in appellee's motion for partial dismissal and appellant's motion to dismiss. Then Mr. Harper will address the merits of the appeal as they apply to the defendants, specifically the inverted 12b-6 standard applied by the district court, the timeliness of the 1983 claims, and then finally address the issues involving the dismissal of Dr. Deese on his third filed motion, 12b-6 motion, dealing with FLUPA. As for the first argument, we admit that it's an odd posture to be the appellants filing a motion with this court that you don't have jurisdiction, but that's kind of where we are in this case. Well, didn't they make repeated—are we talking about this Morrison party? Yes, sir. Weren't there repeated representations made to the district court that there were no claims remaining, that no other defendants were remaining? It was—honestly, looking back at the record, it did appear to all of the parties that there weren't any issues remaining, and it wasn't until— No, I'm not asking did it appear. As I understood it, there were representations made to the court that this takes care of all the defendants. I'm summarizing now. Yes, that was made— That there are no defendants left, no claims remain to be decided. That was a representation that was made. However, the case— Repeated representations. I'm not sure if they were repeated or not. But at least one. Yes, that's correct. I do believe that this court, under this court's previous rulings in, I think it was the Morrison case, and Campbell and Myers, say that representations made to the court about—a district court about the view of whether or not all decisions had been reached is not something that can be considered, because it's this court's determination of whether the decision has been final. Well, we could consider that as judicial estoppel. It's like everything's taken care of. Judge, go ahead and enter this judgment. And, in fact, as I understand it, there are two different Morrisons. There's Morrison-Camp, and then there's another Morrison, and then one of them was named in the order of dismissal. There is Camp Morrison, an individual. Right. And there's Camp Morrison Investigations LLC, an entity. One of the arguments the appellee makes is it doesn't matter because they're the same person, but they're not. One is a natural person, one is a juridicial person. Law is clear that they cannot be treated and combined at the same time. They must be ruled on separately. This court, in— You know, if we would allow parties to tell the judge, everything's taken care of, Judge, no claims remain, go ahead and enter the judgment, final judgment, and then they get into the appellate process, and they're thinking, you know, this isn't looking good for us. Let's find us a defendant that we didn't deal with and file a motion months later and take it all back to the district court. That railroad doesn't run that way. Well, that may well be true, but this was not a matter of us trying to dig around for something else to find. There are two issues here. The first is we've got Camp Morrison, LLC, who was named and served. Service was completed on two separate occasions. And then the other matter is that the other—none of the appellees realized it either. It was kind of a constant mutual mistake. We just represented to the court that there weren't any claims remaining. The fact that we represented to the court that that's true does not obviate the necessity that the district court must rule and make a judgment final. And if not, there are clear requirements under Rule 54 to make it a non-final judgment. The cases of Witherspoon, Briargrove, and Myers cited in our motion to dismiss in our reply brief govern, and those control this case. Moving to the second issue— You said you don't want to hang around that issue very long. Well, I mean, I don't think that there's a whole lot of reason to hang around that issue at this point. I think that Witherspoon, Briargrove, and Myers govern. Those are all cited in our brief. Basically what you're saying is what I represent to the judge doesn't count. If there's a mutual mistake and, in fact, all the parties have not been dismissed, that's correct, Your Honor. That's what the law says. I was also going to address, in part, the motion for partial dismissal that was filed by Apelles. Since I only have a couple of seconds left, I— You can take some time. You've got 20 minutes. Take some of your time. Keep going. Okay. I can do that. The finding—one of the issues— The finding on the fact that the judgment was not final and that all of the entities, all of the defendants, had not been dismissed permits this Court to circumvent what is honestly a procedural quagmire that has been created in the district court, and admittedly that was, in part, Appellant's responsibility. However, we think that we can circumvent that issue by dealing with our motion to dismiss. On the matter of the motion for partial dismissal, we think that that results in an issue— that's an issue of first impression in front of this circuit, and we believe that this Court should adopt the D.C. Circuit's rationale in Mobley, which we discussed in our briefing, because while there is jurisprudence that clearly states that Rule 4A.5a is jurisdictional, there's also equally weighted jurisprudence that says that Rule 59e is claims processing. Bowles and Hamer don't address that interplay. Mobley does. And the unique circumstances application that was applied in Mobley should equally be applied here. So on those issues, I will—with that, I will move to Mr. Harper and the merits. And if anyone has any other questions on jurisdiction. Jerry Harper, Your Honors. Thank you for reserving the hard questions for me instead of my colleague. I'd like to address the actual substance of the district court rulings, the 12B6 rulings. The district court granted 12B6 motions in favor of all defendants except the LLC entity and dismissed all the claims against them, including claims of a conspiracy to violate LUTLA, Louisiana Unfair and Deceptive Trade Practices Act. The motions that were filed, the 12B6 motions that were filed, were accompanied by the attachment of a large number of documents. At least one of those pleadings was an alternative motion for summary judgment. The motions themselves were filed in a piecemeal fashion between 2013 and 2016, and they were disposed of in an equally piecemeal fashion with rulings on those motions occurring about every 18 months. As the record reflects, the opinions of the district court and the— well, the opinions contained very little by way of analysis of the actual allegations of the complaint, which is, of course, the meat and potatoes of a 12B6 motion. The first amended and restated complaint in this action contains 197 separate paragraphs and is 57 pages long. The district court's analysis and disposition of the LUTLA conspiracy claims against the Hill Appellees, the Ogden Appellees, Blackwood Appellees, consist of the same single sentence. The 12B6 motion is granted, quote, because Dr. Haygood's bald conclusory allegations that these defendants were involved in a conspiracy with the dental board fails the plausibility standard established in Twombly and Iqbal. Likewise, the court disposed of the LUTLA analysis as to the Hill Appellees in one sentence stating, the allegation that Dr. Hill wrote a letter to the dental board and encouraged patients to do the same fails to rise to the level of facts necessary to support a claim under a Louisiana statute. That sentence is nearly word for word from Dr. Hill's brief. There's no specific reference to any allegation in the complaint, despite the fact that the complaint itself is replete with additional allegations about Dr. Hill's participation. The opinion of the district court on the motion, 12B6 motion of the Ogden Appellees, disposes of the conspiracy allegations by simply quoting the defendant's characterization of the allegations. Quote, plaintiffs failed to point out any facts regarding when, where, or how a conspiracy was formed. Two, that the defendants agreed to restrain trade in dental services. Three, that the defendants communicated regarding the restraint of trade. Or four, that the defendants shared a common interest in the restraint of trade. That conclusion ignores numerous allegations right on point with those alleged deficiencies in the complaint. The district court then denied, at first, Dr. Deese's 12B6 motion, which addressed LUTPA claims, and denied it with prejudice. Undaunted, Dr. Deese filed a second 12B6 motion, and he filed a third 12B6 motion. The third motion was granted on the LUTPA claims that had been dismissed with prejudice. And when it was granted, the finding of the court was, quote, the court finds that all of the Haygood plaintiffs' factual allegations against Dr. Deese, including those relating to alleged false and inaccurate testimony, were integrally related to the dental board's investigation and licensing decision involving Dr. Haygood, despite the Haygood plaintiffs' allegations of malice and unreasonable conduct, Dr. Deese's actions fell within the scope of his duties as an independent expert. Again, that finding by the court evinces no familiarity with the actual allegations in the complaint about Dr. Deese, among others, that he made an effort to purchase Dr. Haygood's practice through a business broker during the investigation, that he offered to grant immunity to a fact witness, that he hired away some of Dr. Haygood's staff and asked for their testimony in the case. All of that's alleged in the First Amendment complaint. None of that has to do with the bona fide activities of an expert witness. I hope we can agree. The task of the district court was to examine the factual allegations in the complaint, and those allegations are supposed to be accepted as true and viewed in the light most favorable to the plaintiff. Respectfully, Your Honors, the district court could not have reached the conclusions that it reached had it done so. The court could not conclude that there were no allegations, for example, of when, where, or how the conspiracy was formed. Dates, times, places, participants are alleged in the pleadings. We believe that it's no exaggeration to conclude that the district court, rather than viewing all of plaintiff's allegations as true and in the light most favorable to the plaintiff's, instead viewed the defendant's characterizations of the allegations, often verbatim, in a light most favorable to the defendant's. It inverted the 12B6 standard, and that error infects all of the court's decisions with respect to the 12B6 motions. As to the 1983 claims, the court, perhaps because of existing confusion in the jurisprudence, used the wrong accrual period. We've cited McDonough. McDonough has since been decided. The Supreme Court in McDonough says that when you have a cause of action for malicious prosecution or falsification of evidence, which is alleged here, the accrual of the case occurs upon the resolution of the underlying litigation. That would have been no earlier than the Supreme Court's denial of Ritz on or about December 14, 2012, or the entry of a consent decree in 2016. Either way, those 1983 actions were improperly dismissed. The D's motion to dismiss standing alone is improper. Under Rule 12, both because it was earlier denied with prejudice because of the preclusive effect of a prior ruling by the state courts, the same issue. And a year and a half later, the court entertains that motion and grants it. That was an abuse of discretion. Rule 12 does not permit a litigant to assert inseriatum arguments over the same cause of action in one bite after the other of 12B6 motions. Independently, the court used the wrong—had there been nothing else wrong had this been the first motion? The court used the wrong immunity analysis in that case. The only immunity that's available in these cases, the Louisiana Supreme Court, in at least three cases, has shown the interplay of the qualified immunity granted in peer group evaluation context, that's Driscoll versus Stuckey and Granger versus Christus Health. That's a qualified immunity only, and the defendant is not entitled to that immunity if he is acting maliciously or without a reasonable belief in the propriety of his actions. Here, the court noted the allegations of malice, and yet granted the 12B6 motion anyway. Your Honor, I'm happy to answer any questions you may have. Thank you. Okay, may it please the Court. My name is Barbara Melton, and I represent the appellees. I'm going to be addressing the jurisdictional issues. That's the threshold issue that we want this court to look at, right? So I'm going to address the jurisdictional issues. I'm also going to address the substantive issues, time permitting, for really all of the appellees. I drew the shortest straw that ever existed, I think. I'm going to argue that, the substantive and the jurisdictional portions of this. My colleague, Mr. Harrigan, is here to discuss the claims of Dr. Deese as it relates to what actually was just discussed at the end of Mr. Harper's about the Rule 60 and the immunity. On the jurisdictional issue, what's not disputed, and I'm going to get to where you went with this. It's not disputed there was no timely notice of appeal. Not disputed. It's not disputed there was no timely motion for an extension of an appeal. Those are not disputed in the record. So what happened is they sought a motion for extension untimely when they realized their Rule 59 had not been timely filed. So the district court actually initially— They filed a motion for extension of time to file their notice of appeal. Yes, Your Honor. And that was on June 27, 2018? Yes, Your Honor. That would have been, Judge Duncan, that would have been— I was looking at the timeline. It was about 125 days after the February ruling, which was the final ruling on the last remaining claim against the plaintiff. Why did they need to file a motion to extend time on their notice of appeal? The way the Rule 4 reads is it's 30 days from when your time to file a notice of appeal would have expired. So, Your Honor, to kind of look at it easily, it's 60 days from the judgment, basically. Right? So you had 30 days to file your notice of appeal, and you'd have 30 days from the expiration of that 30 days to file that motion. Isn't that in the statute? It is. Absolutely. It is 2107. It is mandatory. It is jurisdictional. It is congressionally created. But if there's no final judgment, don't we have to reach to that question first? So in an effort to avoid those two things of not filing the notice and not timely filing the motion, exactly, Chief Judge, they basically now say, well, we can defend that because there really never was a final judgment. Okay, there's a couple of issues. Judge Barksdale raised one of them, but let me say this. Fortress, even assuming, Judge, the one they're arguing, Chief Judge, that wasn't a final judgment is the February judgment, which clearly disposed of the last of plaintiff's claims. Shortly thereafter in April, there was an intervention by Fortress, and Fortress had intervened on some coverage issues, guys, and they basically were saying — Coverage issue what? Fortress had intervened in the suit based on coverage for two of the defendants, insurance coverage. I thought I heard you refer to us as guys. I'm sorry? I thought I heard you refer to us as guys. Oh, I'm sorry. I'm just — no, Judge, I'm sorry. Fortress had intervened on a coverage issue, and after the ruling on Judge Deese, I mean on Deese that came out in February, shortly thereafter, the only claim that even arguably could have been left, assuming it was an integral claim, Your Honors, was this intervention. That was dismissed. Now there are no claims left for sure. So even given the benefit of the doubt, Chief Judge, as to whether or not the February judgment was a final judgment, Your Honor, even if we — and I'll definitely discuss why we think it's a final judgment. Even if you kind of skip over that analysis, there's no question the Fortress dismissal was the final in the series of — What was the date of that? That was April 22nd, I believe. I'm sorry. I'm sorry, Your Honor. It was April 11th, 2018, and it was in the — it's record site 3133. So that was dismissed on April 11th, 2018. So even assuming you take their argument that February wasn't final, you definitely have this one that was the final on April 11th, 2018. So Judge Barksdale, one of the ways they've tried to address this and kind of avoid those late filings is to say, look, Camp Morrison Investigations LLC is still a party that was named in the original complaint, and therefore because of that we don't have a final judgment because there's still this party hanging out there, right? And so the problem with that, Judge Barksdale, is exactly what you referenced. There are multiple references, and we put those in the brief where the representations were made that there were no remaining claims against any of the parties other than the claim that was still pending under Louisiana Unfair Trade Practice against Dr. Deese. And, of course, that's what was decided in February of 2018, that we had argued the final judgment. One of those representations I want to bring to the Court's attention is in a joint status report submitted by all the parties. Now, just to give you the backdrop, because I think, Judge Barksdale, this goes right to what you were talking about, because I think what this is going to add up to is they cited various cases that the parties' intent can't matter and that basically they can't waive the jurisdictional issues. But the joint status report, Your Honor, I think is going to add up to what essentially is a Rule 41 voluntary dismissal. So the joint status report's in the record at page 2602. And just let me set the background real quick. This came about after multiple judgments, because we have about 10 defendants, and there were multiple judgments over a two-year period. And so after one of those final judgments in 2016, the magistrate asked us to have a status conference. And in that status conference, he said, Can y'all go back and file something that tells me what's left? There's been a lot of motion practice, a lot of judgments. Parties, y'all go back. Y'all go back and figure out what's left, and I want you to file a joint status report. That's what's the product of in the record on page 2602, record site 2602, which is a joint status report that was prepared by the appellants, and it was filed by the appellants. And in that joint status report, it actually has Camp Morrison Investigations, LLC, a nonexistent entity that we think could have never been served. You never could comply with Rule 4 or 5 for service because it has no agent of service of process. So it would be an unserved, non-appearing defendant. But in any event, they put them in the appearance clause, and then everyone that had appeared in this lawsuit signed it. So I'm thinking about those elements of Rule 41. The plaintiff may stipulate an action by entering a stipulation signed by all parties that have appeared. All parties that had appeared signed this joint stipulation. I mean, this joint status report. And in there, what it says is, and again, the appellants had drafted this, Your Honors, and what it says is, quote, the parties have conferred and believe that plaintiff's sole remaining claim not dismissed by the court's various memorandum rulings or the claims asserted against Dr. Deese under Louisiana fair trade practice. It did go on to mention claims against the board members. That was a deck action, but those were ultimately dismissed right after. Is that in the status report? Yes, Your Honor. That is in that. Agreement? When did all that occur? Yes, Your Honor. This all happened in April of 2004. I mean, 2016, I'm reading the form. And that's record site 2602. And again, that was the product of the magistrate saying, guys, go back and see what you still have, and let's come give us a status report so we know what's left. And the product of that is the plaintiff's filing something that Judge Barksdale, you were referencing. That's just one instance where there's a representation that there are no remaining claims by the plaintiffs except for the claim as to Dr. Deese on LUPTA. And the reason that claim was left at that time, Your Honors, is under a full faith and credit analysis that was done by Judge Hicks where he said, because we've got two cases. We have a state case going on in this, and we've got a federal case going on in this. Okay, so. Your thought on the joint status report, is your argument that it's a voluntary dismissal under Rule 41? Yes, Your Honor. You're saying it's a stipulation of dismissal by all parties who have appeared. Yes, Your Honor. That's correct. And I found the fact that it's not called a stipulation does not present a problem, and the fact that it doesn't have that formal moniker does not cause a problem. And there's actually a Fifth Circuit decision. It's the Oswalt v. Scripto decision where it basically talks about what's tantamount to a stipulation and that of dismissal under 41A12. And in that instance, the Fifth Circuit said, we're not deterred that this was only the dismissal of part of an action. Judge Duncan, you'll see in there, it says dismissing of the action. And certainly there had been some courts that said, well, that means he's got to dismiss the whole thing. And the Fifth Circuit rejected that in Scripto and said, no, it can be a single portion of the claim. It can just be one part of his entire action. The court in Scripto also rejected the idea that the dismissal had no ---- it was not a formal stipulation, that it, again, didn't have that moniker or it wasn't filed as such. And what the court basically says is in that particular instance, the parties had settled, and there was apparently a representation to the court that the parties had settled and those claims wouldn't go forward, but nothing was ever filed. Well, then it gets on appeal and the plaintiff tries to argue, well, there's a party still existing. It was the party they'd settled with. And they said there's a party still existing. And basically the court, the Fifth Circuit said, no, we can review that. It is appealable. You all have made representations. There are no claims against that party. And for that reason, we do find that it does not affect the finality of it. The next thing on the Camp Morrison investigation, Inc., Your Honors, that really is ---- because when you consider the Fortress decision coming down right after what Chief Judge Olin was asking about, when you consider the Fortress decision coming after the January, I mean the February 2016 decision, it kind of overshadows the need to, I guess, really determine whether that was a final judgment because you certainly had that one coming that was the only last possible potential claim at all, which was the intervention, which really was a deck action. So when do you claim the actual final appealable judgment occurred? At the latest, Your Honor, it occurred when the dismissal, the Fortress dismissal was filed on April 11th of 2018. I think that's really giving the benefit of the doubt to the appellant because I think that the actual February dismissal by the judge of the only claim that was left and that they had represented and, you know, had been represented, that was the only claim left. But again, just given the benefit of the doubt, if you used that Fortress dismissal, Judge, that would have been April 11th. Their motion, no notice of appeal was filed within 30 days of that. Their motion for an extension to file that notice of appeal was not filed until June 27th, which would have been 76 days after the— But there was a Rule 59 motion and a Rule 60B motion pending before April 11th. Well, the Rule 59 motion was untimely, and the Rule 60 motion was untimely for the purpose of suspending the appeal delays. They had to file them on the 28th. Well, under your theory, if the judgment was 4-11, they weren't because they were filed prior to 4-11. The judgments—Your Honor, respectfully, the motion for reconsideration was not on the Fortress dismissal. They were on Judge—Mr. Dr.— They didn't extend the— Right. Well, they couldn't have, right? Right. Because 59E and the 60B, with respect to the February 22nd judgment, you can't reconsider something that hasn't happened yet. Exactly. And so they filed those untimely, so the February judgment was not under reconsideration, and it's subsequent to that that that final actual judgment comes down from the Fortress dismissal, which, again, at the latest would have been when the time frame for taking an appeal or for filing a motion for extending the appeal, you know, would have happened. The last thing I think, Your Honor, Judge Barksdale, you had asked about, you know, about those representations. I do think—I have to respectfully say I do think—and the representation was we didn't just kind of dig around, I think was the language that my colleague said. I mean, this clearly was kind of a Hail Mary. This was a, okay, there's this party out here, and we forgot they were out there, and I think they admit that in the brief. I think the fact that those representations were constantly made to the district court in their own filings and in the judges' rulings, it's clear that that claim had been dismissed, voluntarily dismissed. There's a reference by appellant when they're filing a motion on actually exercising supplemental jurisdiction, because the judge asked us—because what was left? All that was left was Judge—was Dr. Deese's loop-de-claim. That's all that was left. And so the court—Your Honor, may I finish that thought? That's all that was left was this one state law claim, and so the court said, well, should I even exercise supplemental jurisdiction? That's all you have is a state claim. And in the filing that the appellants filed on that issue, they represented to the court all claims, federal claims, that have been decided by motions or all claims have been abandoned other than that.  Mr. Harrington. Good afternoon, Your Honors. Brad Harrington for Dr. Deese and his dental practice. Before I get into the issues that were raised in the appellant's argument concerning immunity and the number of motions to dismiss filed, I think that's putting the cart before the horse because the threshold issue was the appeal timely. That's what was just discussed. We believe, obviously, that it was not timely, and if it's not timely, then the only issue before this court is the Rule 60 issue. And the Rule 60 issue is the district court denied the appellant's motion for reconsideration under Rule 60. The appellant spent one page in their brief on this issue, just one page. There is no case law cited. There is no discussion of the factors of Rule 60, of why, of what even the standard of review would be. Well, the standard of review for review of a Rule 60 denial is abuse of discretion. There is nothing in the appellant's argument about Judge Hicks abusing his discretion and denying the Rule 60 motion. There is no indication that the judge's ruling was unreasonable. And there is also, again, no discussion of the specific factors. Rule 60 is not like Rule 59. Rule 59 allows a more thorough reconsideration. Rule 60 is limited to ministerial, clerical errors in the judgment itself, and it sets out those issues, clerical errors, fraud, vice. It names all the different issues for why the court can go back up to a year after the judgment and amend that judgment. None of those factors are present here. If the appellant's argument is to be believed, then there is no finality of judgment ever for any ruling for up to a year after that ruling is issued. That is essentially what they are arguing is a rewriting of Rule 60 in order to do a catch-all and try to come back after the fact to make arguments under Rule 59. That is essentially what they are doing. The next issue concerns the number of motions to dismiss. Appellants spent a good number of pages discussing that Dr. Deese had moved for three motions to dismiss and essentially made the argument that Dr. Deese failed to argue immunity in his first motion to dismiss and therefore somehow waived it or could not come back and file a new 12B6 motion. That's not correct. First of all, it's factually incorrect in addition to being legally incorrect. The reason why I say it's factually incorrect, in Dr. Deese's first motion to dismiss, there is a separate subsection, a Roman numeral II, I believe it is, concerning immunity. Dr. Deese's first motion to dismiss, he advanced the immunity argument. That is the record citation page 278. In that, he incorporated by reference the co-defendants' immunity arguments and incorporated them into his brief. In response, Judge Hicks said, no, these two defendants are separate. There are sufficient differences between them that I'm not going to look at them the same and therefore denied it without prejudice, denied the first motion to dismiss on immunity without prejudice, and essentially inviting us to come back, file it again, and this time fully brief it and explain why Dr. Deese is entitled to immunity. That ruling can be found in the record under page 1798. So Dr. Deese did do that. He came back and filed the third motion to dismiss, and that was granted. And the reason why the court granted it was based on immunity. Now, there are three relevant statutes here, two of which provide absolute immunity. The one that does not provide absolute immunity is 791. 791 says that you get immunity unless you knowingly, falsely testify before the board. There are no allegations in the plaintiff's complaint that Dr. Deese knowingly testified falsely. Instead, what it says is that the plaintiff's alleged that Dr. Deese's reports have inaccuracies, studied with inaccuracies and falsehoods, and that Dr. Deese knowingly submitted his reports to the board. That is not the same as what the immunity statute says, which is that he knowingly testified falsely. That is not anywhere in the plaintiff's complaint, and Judge Hicks was correct. The court can hang its hat on any of the three immunity statutes. All apply and all provide immunity for exactly this reason. It's a public policy reason. No dentist in his right mind. You've exceeded your time. Apologies, Your Honor. May I finish the thought? No dentist would step forward to voluntarily appear before a board hearing if offering those opinions concerning a number of patient complaints would then result in being sued. For these reasons, thank you, Your Honors. Very briefly address one comment that Mr. Harrigan made about all three of the two of the three statutes referenced with regard to immunity allow absolute immunity. That is in accurate 37, 931, and 41 U.S.C. 1111 permit qualified immunity as well as the other 13, 3715. Moving back to the issue of jurisdiction, we do admit that it's a Hail Mary, but here in terms of the Camp Morrison LLC issue. What's a Hail Mary? A Hail Mary. Oh, I know what a Hail Mary is. Yeah, I say them all the time, but what is it? The Camp Morrison LLC filing of a motion to dismiss for lack of jurisdiction because that party has not been dismissed. I got you. It's a Hail Mary. But here in this case, it's gone on for five and a half years, 29 parties, more than nine law firms. Nobody caught it. I mean, we look at the joint status report. We did list the names of the parties. What's your response to the argument that I heard that it should be construed as a Rule 41 voluntary dismissal? That is the first time I've heard that argument, Your Honor, and it was not in the briefings. If you would like me to. Well, you said you made only one representation, and you didn't include that one. She's just responding to what you've argued today. She's just fleshing out the record for us, which is appreciated. Well, she did actually cite the joint status report in her brief, and we cited that as well and addressed them in our briefings. The Rule 41 focus in the cases cited there, too, were not provided in briefings, and if the court would allow me to file a two- to three-page letter brief in response to that, if you would like to ask. That's permitted. Okay, within two weeks? No, about seven days. Seven days? Yes, Your Honor. I'd be happy to do that. But the fact of the matter is that the rule is not only no remaining claims. The rule is there are no remaining issues. Issues include parties. Issues include claims. There is a remaining party, Camp Morrison Investigations, LLC. Service on a jurisdictional person is achieved by ñ there are certain ways that that is achieved. The fact of the matter is that there are submissions into the record that Camp Morrison, LLC, was served twice. Service was effectuated twice. It was counseled by that party. There has never been counsel. The party, to my understanding, doesn't look like it's ever appeared with the exception of that status conference filing, which I can't explain. And Camp Morrison himself? And Camp Morrison himself. However, that doesn't matter because jurisdiction ñ Camp Morrison himself appeared, and he was dismissed. He did. But the fact remains is that a jurisdictional person and a person ñ I know that. I know your argument. Okay. I'm just pointing out the obvious. Well, we'll look at the Rule 41 issue. Okay. And I'll look into that. We'll look at your Notice of Appeal. I'm sorry? Notice of Appeal. Yes. The Notice of Appeal issue is we are relying, again, on Mobley and the timing on Rule 59E and Rule 60B. Those are claims processing. So unlike 2107, which says that the time for delay of a Notice of Appeal is jurisdictional, 59E and the timeliness of that filing is, in fact, a claims processing rule, which there is some room for discretion. When did you say there was a final judgment, and when was your first Notice of Appeal? Our first Notice of Appeal was filed on July 20th. When do you say there was a final judgment? The final— Assuming we disagree with you. The final judgment would be July 10th. And that was the court's—I'm sorry. Go ahead. That was the court's ruling on our motion for reconsideration as well as our notice to the court that we were requesting additional time to file under 4A5. Wait, now, wait. You're saying the final judgment was 10 July. That's when the court denied your motions under Rule 59E and 60B, which you conceded were untimely. That's correct. But his ruling on the permission to—on our attempt to be permitted to file an appeal is basically like Mobley, where we— And Mobley is from what circuit? D.C. Circuit, 2015. It is persuasive authority. I cannot find any case law in the Fifth Circuit that addresses the interplay between 59E and 4A5. And for those reasons, Your Honor, please take this into consideration. We appreciate it. If we disagree with you that July 10th was the final judgment, what is the final judgment? If you— What are our other choices? Yes, whether—because if we conclude that the 59E and the 60B motions were untimely and therefore could not extend the time for notice of appeal or extend the time for final judgment, when is the final judgment? And also assuming that Kent Morrison LLC— Yes, also assuming that. I guess it would be the February 22nd ruling by the Court on the D's motion to dismiss. However, I do want to just briefly note that regardless of the timeliness of 5960 and the notice of appeal, the Rule 60B issue, as it relates to D's, is still properly before this Court. Yes. Okay. Thank you. Thank you. That will conclude the arguments for today. I'm sorry? Okay. The Court is adjourned until tomorrow afternoon. This panel is adjourned.